Milligan, J.,
delivered the opinion of the Court.
On the 14th of June, 1861, Thomas J. Manley, made and published his last Will and testament, which was duly proven, and admitted to record. The second and third clauses of which are as follows:
*52 “2d. After the payment of my debts, I give, devise and bequeath, all of my real and personal property, of every kind and description, situated in Bolivar County, and State of Mississippi, and in Shelby County, and State of Tennessee, to my- wife, Mary E. Manley, and my son, Thomas J. Manley, to be equally divided and held between them, as hereafter specified; that is to say: I give to my wife a life estate in one-half of all my property, and if she dies before my son, I direct the half of my estate herein given to her, for life, to revert to my son, Thomas J. Manley; if my son should die before my wife, I direct that the half of my estate, herein given to him, shall revert to my wife, for and during her natural life. If my son should die before arriving at the age of twenty-one years, and without lawful issue, I direct that the net proceeds of my crops shall be paid into the hands of my two brothers, John M. Manley, and James M. Manley, and of my two sisters, Frances E. Pritchett, and Mary E. Bryant; but if my wife should be living at the death of my son, my property shall belong to her, during her natural life, and then the proceeds to be paid over to my brothers and sisters, or their heirs, as above directed.”
“8d. I direct that my executor shall keep all my property together, and have the plantations cultivated, for the use and benefit of my wife and child, during their lives, or the life of the survivor of them, and after their death, to be kept together for the use and benefit of my brothers and sisters, or their heirs; and the proceeds, after paying all my necessary expenses, to be paid over to my brothers and sisters, or their *53 representatives, before stated. If my son,. Thomas J. Manley, shall arrive at the age of twenty-one years, and shall survive my wife, I then give and devise and bequeath all my estate, both real and personal, to him absolutely, or his lawful issue living at the time.”
Soon after the death of the testator, and within the time limited by law, his widow, in regular form, dissented, both in Tennessee and Mississippi, from the Will, and took under the statutes of dower and distribution. The son, Thomas J. Manley, after the dissent of the widow, and during his minority, died without issue; and this bill is now brought by the brothers and sisters of the testator, to have the Will construed, and the rights of the different parties claiming under it, declared.
The intervening facts of the dissent of the widow, and the death of the son out of the way, it is believed there is but little, if any, ambiguity in the Will. These facts are supposed to have involved the rights of the parties in doubt, and rendered it necessary to have them declared by a Court of Equity.
The complainants insist that their interest under the Will, became vested on the death of the son, Thomas J. Manley; and from that time, they were entitled to the beneficial use and enjoyment of the entire estate, subject only to the rights of the widow, acquired through her dissent, under the statutes of dower and distribution. The defendants, on the other hand, insist that the interest under the Will, to which the brothers and sisters were entitled, was contingent, dependant upon the death of the son before majority, and without issue; *54 and that, on his death, their interest became a fixed, vested interest in the remainder, but not to take effect in possession, until after the death of the widow.
A single question is, therefore, presented for our determination; and that is, whether, on the dissent and refusal of the widow to accept the provisions of the Will in her favor, and the death of the son, the ulterior limitations to the brothers and sisters, took effect in possession, or awaited the death of the widow; passing, in the mean time, as an undivested estate to the heirs ? This is the question; and in order to arrive at a satisfactory solution of it, it is necessary that we ascertain the legal effect of the widow’s dissent to the Will. By our law —Code, sec. 2404—she has the right, within one year after the probate of the Will, to elect whether she will accept its provisions, or dissent, and renounce them, and take under the statutes of dower and distribution. The right of election, although expressly for the benefit of the widow, is, by no means, discretionary. It is imperative. The law compells her to exercise it. If she fail within the time limited, to express her dissent, according to the forms of law, she is held to be satisfied with the Will, and bound by its provisions. On the contrary, if she elect to renounce the provisions of the Will in her favor, and in open Court, within the time limited, declare her dissent,' the whole estate is open, so far as she is concerned, and she is let into the enjoyment of all her rights thereto, in as ample a manner as if her husband had died wholly intestate; that is to say, she shall, by virtue of her dissent, be allowed dower in all the real estate *55 of ber husband, of which she is, by law, dowable; and she shall take, as distributee, a child’s part, besides such articles as are exempt from seizure by execution and attachment, of the whole of his personal estate, absolutely, of every kind and description, as well dio-ses in action, as goods and chattels in possession. But in either event, whether she takes under the Will, or through her dissent, under the statutes of dower and distribution, she is concluded by her election.
She cannot, if she accepts the Will, claim an interest, as distributee, even in property not disposed of by the Will; and vice versa, if she dissent from its provisions, she can claim nothing under it: Armstrong, Adm’r vs. Park, 9 Hum., 195—202; Malone, Adm’r vs. Majors, 8 Hum., 577; McClung et al. vs. Sneed, 3 Head, 219—223-4; Gasston vs. Gasston et al., 3 Head, 488.
The legal effect of the widow’s dissent being thus ascertained, the next inquiry is, how it affected the rights of the legatees? It is clear, the testator contemplated that the ulterior limitations to his brothers and sisters, should take effect only on the death of his wife and son, the latter dying before his majority, and without issue. The prior estates in the mind of the testator, was manifestly to continue until both these events transpired. The Will expressly provides, that the property is for the use of the “wife and son, during their lives, or the survivors of them,” and then over, under the contingencies therein expressed, to the brothers and sisters.
The testator did not anticipate his widow’s dissent *56 from the Will, and, consequently, made no provisions to meet the change produced by it; nor did he intend to die intestate as to any part of his property, or any interest or estate therein. His purpose was, to dispose of the whole, and in the manner expressed in the Will. But the right of the widow to dissent, and thereby to defeat the purpose of the testator, at least so far as the bequests to her are concerned, is a clear, legal right, and when lawfully exercised, imposes upon the Courts construing the Will, the necessity of subjecting the intention of the testator, which otherwise, if not contrary to legal policy, is to prevail, to the rules of law applicable to the new state of facts created by the dissent.
By the will — the intervening facts out of the way— an estate for life was vested absolutely in the widow, in an undivided moiety of the testator’s whole estate, subject, on the death of his son before his majority, without issue, to be increased, by survivorship, to a life estate in the whole.
The son, in like manner, was vested with a life estate, absolutely, in the other ■ moiety, with the right of survivorship, on the death of the mother; and also a defeasible inheritance, in fee, of the whole, subject to be defeased on his death before majority, without issue. The brothers and sisters took a contingent remainder in the whole, dependant on the death of the son, during minority, without issue. The prior estates were both for life, with a contingency in that of the son which never happened; and the testator clearly intended that the limited estates should be determina *57 ble only by tbe death of tbe life tenants. But tbe one was determined by tbe dissent of tbe widow, and tbe other by the death of the son. On tbe death of tbe latter, it is clear, tbe contingent interest in remainder, expectant on tbe death of tbe son without issue, before majority, became vested in tbe brothers and sisters; and tbe question now is, shall its beneficial use and enjoyment take effect in presentí; or to be postponed to await tbe death of tbe widow, and tbe intervening estate for her life pass, in the mean time, to tbe heirs ?
Upon principle, as well as authority, we think it clear, that tbe beneficial use and enjoyment of tbe interest in the remainder, took effect immediately on tbe termination of tbe prior estates.
To bold otherwise, would greatly embarrass the winding up of the estates, and be at war with both reason and authority. Tbe ulterior, or expectant estate, is limited on tbe prior estates, and whatever lawfully terminates them, at once lets in tbe remainder-men to tbe full use and enjoyment of tbe estate vested in them under tbe provisions of tbe Will.
This doctrine is sanctioned in Jarman on Wills, as well as by our own Courts: “The doctrine,” says Jarman, vol. 1, 513, “evidently proceeds upon tbe supposition, that though tbe ulterior devise is, in terms, not to take effect in possession, until tbe decease of tbe prior devisee, if tenant for life, or bis decease without issue, if tenant in tail, yet, in point of fact, it is to be read as a limitation of a remainder, to *58 take effect in every event Avhich removes the prior estate out of the way.”
The same principle was involved in the case of Armstrong, Adm’r vs. Parks’ Devisees, 9 Hum., 195. In that case, the testator, among other things, devised a house and lot, and set apart twenty thousand dollars, for the use and benefit of his wife, during her natural life, and at her death, over to other legatees. The widow dissented; and one of the questions in the decision of the case, was, whether the bequests in favor of the widow, were to be treated as undisposed of property, or passed at once to the devisees, under the Will.
Judge Turley, in delivering the opinion of the Court, upon this point, said: “We think that, inasmuch as she has dissented from the Will, all the property devised to her, as well as that which is specific as her annuity, of one thousand dollars a year during her life, falls back to the estate; and that the fund of twenty thousand dollars, directed by the Will to be set apart by the testator’s executor, out of which to pay the annuity, remains an integral part of the estate, not to be charged with the annuity — that the object for which it was solely created, having failed by the dissent of the widow, as completely as it could have ■ failed by her death. Without such dissent, this fund cannot, and ought not, to be separated from the estate, but must be left to pass under the Will, as other portions of the estate, after the widow’s right to dower, and her distributive share, are satisfied.”
*59 This doctrine has also been fully recognized in New Hampshire, in the case of Yeaton vs. Roberts, 8 Foster, 459. The clause of the Will, in that case, under consideration by the Court, is as follows: “ I give to my beloved wife, Mary Yeaton, the use of all the rest and residue of my estate, real, personal and mixed, wherever the same may be lying, or being situated, or found to be, for and during her natural life, and no longer; and then to descend and go to the children of said Oliver Yeaton, and to the children of said Leavett H. Yeaton, and such other children as they may have, in equal shares, in fee.”
The widow, Mary Yeaton, soon after the death of the testator, declined the devise and legacy created by the Will, in her favor.
On the hearing, the question was, in the language of the Court, “whether, upon the refusal of Mary Yeaton to take the life estate, the ulterior limitations took effect in possession, or awaited the death, passing, in the meantime, as undevised estate, to the heir, according to the claim of some of the defendants in this suit.”
The Court, in delivering the opinion, said: “An estate in remainder, vests in possession immediately on the termination of the life estate, upon which it is limited, by the death of the tenant for life, as by the surrender or forfeiture of the estate.
“ It is also well settled, that, when there is a devise— a legacy to two in succession — and it fails as to the first, for cause that would, but for the gift over, create a lapse, the next in succession, or remainder, shall take it. Whether, therefore, we treat the devise to Mary Yeaton, *60 as having lapsed by her refusal to take it, according to the decisions in the like case, (Howley vs. Jones, 5 Page, Ch. R., 418,) or according to the case put by Coke, (Co-Lit., 208,) of a remainder given to an infant, who, on coming of age, refuses it, we treat the life estate as having for a moment, vested in Mary Teaton, the consequences seem to be the same. The children, in either case, according to established principles, take the property immediately.”
These cases, it is believed, are applicable to the case under consideration, and decisive of it.
The decree of the Chancellor must be affirmed, and the cause remanded.